Mr. Sweeney, John Sweeney is here for the appellate and Christopher Baum is here for the commissioner. And Mr. Sweeney, you may begin. Thank you, Your Honor. My name is John Sweeney. I represent the Plaintiff Appellant's National Rifle Association in Radford, Van. Thank you for hearing our appeal on this important constitutional issue. Since the dawn of our republic, 18-year-olds have been called upon to take up arms in defense of our freedoms. Whether mustered into a militia, conscripted or enlisted into our armies, they have sacrificed their lives defending those freedoms. Chief Judge Walker, reluctantly and saying he was deeply unsatisfied with the conclusion, read this court's precedent to say that those same 18-year-olds do not enjoy the same freedoms guaranteed the rest of the adults in this country by the second member of the United States. Let me see what I understand the burden that you allege that the act establishes. As I understand it, it's still not against the law, it's not a violation of this statute for a minor to own a gun and possess a gun, just can't purchase one and you can't sell a gun to a minor. An 18- to 20-year-old in Florida may rely upon the kindness of parents and friends to be gifted a firearm. Other than that, they cannot acquire a firearm. Well, unless of course they're in law enforcement or they're in the military and then they're allowed to. Isn't that exempted? Well, that is. But for the vast majority of the 600,000 or so 18- to 20-year-olds in the state of Florida, they don't have the luxury of having a firearm. Until they turn 21. They have the luxury of having it, they don't have the luxury of buying it until they turn 21. Well, they're not all given firearms at age 18. Of course not. The right in Florida has been turned into a privilege for few and that is not a right at all as guaranteed by our Constitution. Florida's law is far more restrictive than the federal law, which allows private transfers and private purchases of both handguns and commercial as well as private purchases of long guns. And it's more restrictive than all but one other Hawaii statute. All the other states allow some form of purchase under some qualification or condition. Only Florida does not. And that is strikingly different. 18- to 20-year-olds have Second Amendment rights. They have full Second Amendment rights. Don't we have to look under the precedent at whether there are long-standing regulations that are analogous to this type?  Well, you start with trying to determine the scope of the right. We look at the text and the people are guaranteed this right and there is nothing in the text. I'm so sorry to stop you but we are bound by our court's precedent. You understand that, right? And Supreme Court precedent too. I understand the long-standing tradition exceptions that were characterized in Heller and this Yes, I do, Your Honor. And we have said that there is a two-step process by which we evaluate this. First, we look to see whether this is a specific kind of right that was at the core of the Second Amendment rights. Isn't that right? Isn't that what we've said? That's correct. And this one is. And I understand that's your position but the way that we do that under our precedent, which we are bound by, one of the ways we do that is we look to see whether this type of restriction is long-standing and analogous to the types of restrictions that were found to be not at the core of the Second Amendment rights in Heller. Isn't that what we've said we do? That is exactly what this court says it does. And so you would agree with me that that's what we have to look at because we are bound by our principles and our precedent that have said that. Your principles and precedents don't foreclose other analyses. This court and Georgia Carey, too, looked at the text, history, and tradition approach and said, that's not this case. It is not a complete destruction of the right and we're not going to follow that here. So it's not completely foreclosed. Just as Thomas says, that's the test that we ought to use in Rogers versus Grewal, but he said that in a dissent. The majority of the justices on the Supreme Court decided not to adopt that test. So we're not in the business of following dissents, are we? We have to determine whether the judge in this case followed our precedent and Supreme Court precedent. We have taken a position, we have briefed, and as the district court found, preserved the text, history, and tradition standard and we believe it should be applied here. I am happy to move on to this court's two-part test and why the longstanding exception rule does not apply to this restriction. And the reason is, it is not longstanding. Just because some lesser restrictions have been imposed in some states at some time. Aren't they actually even more restrictive? I mean, some of these didn't even allow 18-year-olds to possess a gun. And in this case, the statute allows possession and ownership. So weren't those restrictions from, say, like the late 19th century more restrictive than the restriction that's at issue here? No. Why not? So those laws largely dealt with handguns only, were not as extensive as this law which precludes purchase of long guns. Those are only a minority, at best, of states. There's no federal restriction which is comparable until we look at the one restriction which was dealt with by the Fifth Circuit and the Fourth Circuit that came out in different directions on whether or not it passed muster under Heller. And that restriction is only a sale restriction. That is, licensed dealers are only precluded from selling handguns to anyone between 18 and 20. It does not preclude private sales. It does not preclude the purchase, even commercially from a licensed dealer, of long guns. And those are federal laws, like the felon in possession law, like the domestic misdemeanor law that this court has examined, which are federal laws adopted by the representatives of all the states, not just some examples of some states of some different restrictions. This is not a longstanding restriction. It's of this amount of restriction on the right to purchase, virtually unprecedented. Take laws like Illinois and D.C., which are relied upon by the defendant. In Illinois, an application can be made in the public interest for an exception. No such exception exists in this statute. You are flatly prohibited from purchasing a firearm. You are forced to go and ask people to give you a firearm. That is not how we should treat our 18- to 20-year-olds who serve our country so valiantly under arms. But again, people who are serving our country under arms are exempted from this statute. We've agreed to that. Isn't that right? Exactly so. And they are trained in the use of these firearms. And in fact, interestingly, doesn't the military academy have a regulation that says, for example, that cadets are not to have firearms with them? Well, our military has gone through periods of time in which they've precluded personal arms anywhere on military installations. We could debate the wisdom of that in another forum. What I'm talking about is that there is no comparable longstanding tradition that was widely accepted that had this breadth of a prohibition on the purchase of firearms. And it is not analogous to felon in possession or the laws against individuals who have been or domestic misdemeanors where you have an adjudication of dangerousness that is a predicate for the status of preventing an individual from purchasing a firearm. There has been no adjudication in this case. There has been no adjudication that 18- to 20-year-olds are too dangerous, too irresponsible to be allowed to purchase firearms, to exercise the rights that all other adults have. This is not analogous. It's not longstanding. It's also less restrictive than the restrictions on felons and those who are mentally ill, right? I mean, those individuals aren't allowed to even possess firearms. Absolutely. But under this law, 18- to 20-year-olds are allowed to possess and use firearms, right? That's correct. Okay, so we're talking about just the sale of firearms to 18- to 20-year-olds, right? Shouldn't there be justification in the record for why it is that the sale is dangerous but the possession is not? Well, that depends on whether it's a core right. I mean, if we get to the second step, then absolutely there has to be a basis, a factual basis in the record for why this is a fit. But the district court did not get to that step. Respectfully, that's circular logic. It is not a core right because it has not been universally and uniformly acknowledged by all states over all time. And therefore, because of that, it's not a core right, and therefore, it's not longstanding. And therefore, you're going to lose your right to even get to the second step of the analysis because the district court found that this court's precedents preclude any rebuttal of a presumption of lawfulness for a longstanding restriction of any kind. And we submit- There's no requirement that every state have had this restriction in place. Is there? I mean, can you point me to something that says that? In Heller, the examples that were given in Heller were largely federal. Examples that are widespread nationwide. There are no- There are also examples of state laws, are there not? I do not know of a state law. For instance, this court's own precedent in Georgia Carry 1, which was looking at the place- Georgia Carry 1, which was looking at the place of worship prohibition, went off on universal principles of common law that a private property owner's right to preclude firearms on its premises trumped any Second Amendment right. There's no similar, oh, we've got some state that says this and another state that said something similar, and therefore, no rights exist and you don't even get to step two. Can you point to anything that says all states have to have agreed that these were longstanding traditions or requirements? Longstanding regulations? I will point to Heller, which did not look at any example of a longstanding tradition, which was a handful of states doing something. I don't think you can describe this as a handful of states, I mean, in fairness. I think in fairness, you can. There is only one other state that has a restriction that is this broad. I'm talking about longstanding traditions, longstanding laws. Handguns maybe, but not as broad as long- Well, let's talk about that. Didn't the court talk about handguns as being sort of the quintessential weapon of home protection? Yes, it did. Okay. And so, and handguns under these longstanding laws, as we've just described, are prohibited not just from purchase, but from possession by 18 to 20-year-olds, right? In some states. Yes. A handful of states, yes. Well, you say a handful of states. I do say a handful of states. What do you consider a handful? Less than 10. Well, I think you're mistaken about that, but I think I've seen in the record here that there are at least 19, but I mean, I'll go back and check. All right, 19, less than 10. If we're talking about today, I don't think it's quite that- No, we're talking about longstanding regulations. That's what we have to look at under our- We're talking a minority either way, Your Honor. Would you agree with me with that? There were not 50 states in the United States for the entirety of that period, were there? I think there were more than 42 at the turn of the century. All right, but even so, it's pretty close. Yes, my point is it's not universal. It's not widespread. It's not a federal law. Again, there's nothing that expressly says that every state has to have adopted it or federally it has to have previously been adopted. If there is, I need you to just let me know where it is because I'm not aware of it. I agree that there is anything that explicit would be in our briefs, Your Honor. I agree that nothing that explicit exists, but as Judge Walker said below, with a fundamental right, you should be very prudent in extending the limited exceptions that were expressed in the Heller opinion. With that, I see my time is up. Do I have any other questions I can answer? Could you preserve some time for rebuttal, Mr. Sweeney? Thank you, Your Honor. Thank you. Mr. Baum, you may proceed. Thank you, Your Honors, and may it please the Court. Christopher Baum for the Appellee. Longstanding restrictions on felons and the mentally ill date back only to the mid-20th century. Restrictions on domestic violence, misdemeanors, and habitual drug users, which have been upheld as constitutional, are of even more recent vintage, dating back in some cases to 1996. By contrast, age restrictions are much older and have a much stronger historical tradition. Now, counsel, let me ask you something. Your friend on the other side has said that in order for it to count as a longstanding restriction, it must be a restriction that is either federal or that a majority of the states have adopted. Let me ask you, do you agree with that? And if you disagree, what is the basis for your disagreement? No, Your Honor, I don't agree with that, and I don't see anything in Heller that talks about that being the test for whether something is longstanding. I think the concept of a longstanding historical restriction is based on the idea that if something is a longstanding restriction, it informs the original public understanding of what the Second Amendment protected and did not protect. And in this case, by the end of the 19th century, it was clear that 19 states plus the District of Columbia viewed it completely constitutional under the Second Amendment to enact a restriction on those under the age of 21. And I think that that time period, as Justice Scalia mentioned in Heller, is a critical tool of constitutional interpretation. And so I think that those state legislatures and their understanding of the Second Amendment is powerful evidence that this is a longstanding restriction. And because it's a longstanding restriction, the district court correctly held that it was presumptively lawful under Heller. Now, plaintiffs suggest that the laws from the 19th century dealt mainly with handguns. Now, that's true. But as Your Honor pointed out, handguns are the quintessential self-defense weapon, and it stands to reason that if legislatures believed that they could regulate minors from or prevent minors from purchasing or even in some instances from possessing handguns, then they could do so with respect to long guns. Now, Judge Rosenbaum, you also pointed to this court's precedence as establishing a precedent for a longstanding restriction having to also be analogous. I'm not necessarily sure that that's the case. I don't read this court's precedence in White and Rosier and Foccia to require an analogous analysis. I think that what counts in making a regulation longstanding is that it have a strong historical tradition which informs the original public understanding of the right. And I think if you go back and read White and Rosier and Foccia, there's not much in the way of an analogous analysis. But in any event, this restriction is at least of a type with the restrictions that are listed in Heller in that it is a restriction on a category of people for the purposes of furthering public safety. So if we get to step two, what level of scrutiny do we apply to the statute? Well, Your Honor, as you know, the district court did not reach the level of scrutiny that would apply in this case. And this court is a court of review, not a first view. And as Your Honor knows, this court has never reached step two in a Second Amendment case. And so I think for that reason, it would also benefit from the district court's analysis in the first instance. But to answer your question, if the court were to disagree with us on step one and reach the question of what scrutiny applied, I think intermediate scrutiny would apply because as other courts that have examined age restrictions have concluded, it is temporary in nature in that the individuals will age out of the restriction. And in this instance, it also does not ban possession. Okay. Well, now, the Supreme Court has heard argument already in the New York State Rifle and Pistol Association versus Braun. And so who knows, they might adopt a different analysis than the analysis in our precedent and the analysis in Heller. They might adopt the text history and tradition test. So shouldn't we wait to see what the Supreme Court is going to say in that case or does that case, will that case not inform us? Well, it's hard for me to say what the Supreme Court is definitively going to resolve in that case. As Your Honor mentioned, it could be that the court adopts the text history and tradition analysis. Now, depending on how the court espouses that test, that may affect the analysis in this case. And for that reason, it may be prudent to wait for that court's decision and potentially allow the party supplemental briefing if the court believes it necessary. Let me ask you a question about that then. Let's say that we decide to wait and the court adopts the text history and traditions test. Would it be better for us to remand it to the district court for the first analysis in your view or in your view, would it be appropriate for us to take the first shot at this? Your Honor, our view is that the text history and tradition analysis is essentially the same as this court's analysis under step one. And we prevailed under step one at the district court and we believe we should prevail under step one before this court. And so for that reason, I don't think that a remand would be necessary because under the text history and tradition analysis of which the longstanding regulation category is a part, I think that we would prevail under Heller and this court's precedence regardless. But as I mentioned, it's not clear exactly how the Supreme Court may or may not change the second amendment analysis. It may simply adopt step one, it may do something else, but I'm not in a position to speculate as to what it will do. So as I've mentioned, this is a longstanding regulation. It need not also be analogous, but it is at least of a type with those listed in Heller. And for that reason, the district court correctly concluded that this is a presumptively lawful regulatory measure under Heller and is therefore constitutional. Under this court's precedence, once the court concludes that it is presumptively lawful, that is the end of the analysis and the law is constitutional. In fact, it doesn't even make sense to say that that presumption could somehow be rebutted in a facial challenge. And this is a facial challenge because it doesn't make sense to say, well, based on the historical evidence, this is a longstanding regulation and therefore it meets this presumption, but then some other evidence rebutts it. That doesn't seem to make sense to me. Now, other courts have said that the presumption could be rebutted in some circumstances in as applied challenges. But has the 11th Circuit ever said that? No. When in fact in United States v. Flick, which is an unpublished decision to be sure, the court interpreted this court's precedence as foreclosing and as applied challenge to the felon in possession statute. But I think that that would be the only circumstance in which a rebutting of the presumption would make sense in any case and plaintiffs do not raise any as applied challenge. So for all those reasons, the court should affirm the district court's grant of summary judgment for the appellee on plaintiff's Second Amendment challenge at Step 1. Now, if the court were to disagree and to reach the level of scrutiny, as I've mentioned, that level of scrutiny should be intermediate scrutiny, but after that, the court should certainly remand because the district court did not consider whether the expert testimony going to Step 2 was admissible, whether there was a genuine dispute of material fact, or resolve how the intermediate scrutiny analysis would apply based on that evidence. And those are all highly fact-sensitive determinations that are better left for the district court to resolve. Now turning to Plaintiff's Equal Protection Challenge, that claim fares no better. Rational basis review applies to Plaintiff's Equal Protection Challenge because age is not a suspect class and this case does not involve the violation of a fundamental right. Now when engaging in rational basis review, this court has said that legislatures, when engaging in line-drawing exercises, are entitled to use age as a proxy and that age-based lines are presumptively rational and that unless the regulation is wholly irrelevant to the legislature's public stated objective, which in this case is the promotion of public safety, it passes rational basis review. And I don't think that there's any way in which the court could conclude that this regulation does not in some way promote the legislature's objective of public safety. Did the legislature cite in the school shooting cases the instances where shooters were under the age of 21? Your Honor, under rational basis review, it doesn't, it effectively does not. I recognize that, but I'm just asking you, I thought I read somewhere in the record that it did note that fact. Well, I think that that is part of the record, the legislative record, Your Honor, but I would have to go back and check to be sure. But in any event, as you mentioned, under rational basis review, it doesn't matter what the legislature considered or whether it considered certain evidence. If this court can conclude that there is a rational connection or that it's not wholly irrelevant to the legislature's public safety objective, then it passes rational basis review. So for those reasons as well, the district court should affirm, I mean, this court should affirm the district court's grant of summary judgment on plaintiff's equal protection claims as well. Unless the court has any further questions. Thank you, Mr. Braun. Mr. Sweeney, you've reserved some time for rebuttal. You're wearing out my welcome. I recognize I went over on my opening argument. I just have a couple of points. You mentioned the Bruin case pending before the Supreme Court. We are all waiting with breath for further guidance from the Supreme Court. It's our position that when that case comes down, if this court has not yet rendered its decision, that it should obviously consider that and we would welcome the opportunity for supplemental briefing at that time. Other than that, it's speculative depending upon what the court does with standard review or anything else as to whether a remand would be necessary or not. This court could, in fact, hear the second step of the case based on the record below, the cross motions for summary judgment. These are issues as a matter of law. It's a facial challenge. It probably doesn't require it to go back. And I do need to point out that this law has been on the books since March of 2018. Despite the great cooperation from the Office of the Attorney General and the hard work of Chief Judge Walker, we had a pandemic and it really slowed some things down. We narrowed our case in order to get it heard on the merits as quickly as possible, but it's been three years. We hope it doesn't get delayed another two before we get back to this court again after a remand, so thank you for that. With that, I will thank you for your time and attention today. Thank you, counsel. The court will be in recess until 9 o'clock tomorrow morning.